**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

|                                      |     |                          |
|--------------------------------------|-----|--------------------------|
| **CHRISTOPHER BROWN,**               | )   |                          |
|                                      | )   |                          |
| **Plaintiff,**                       | )   | **Civil Action No.**     |
|                                      | )   | **20-10980-FDS**         |
| **v.**                               | )   |                          |
|                                      | )   |                          |
| **DAMON DASH and POPPINGTON LLC,**   | )   |                          |
|                                      | )   |                          |
| **Defendants.**                      | )   |                          |

_____)

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS,**
**QUASH SERVICE, AND SET ASIDE DEFAULT**

**SAYLOR, C.J.**

This is an action for defamation.  Jurisdiction is based on diversity of citizenship.

Plaintiff Christopher Brown is a Massachusetts attorney who has represented various plaintiffs in

three lawsuits against defendants Damon Dash and Poppington LLC.  Damon Dash is a music

producer and entrepreneur.  He is the owner and operator of Poppington LLC, which operates an

online clothing store and a subscription-based music streaming service.  Plaintiff alleges that

Dash has made defamatory statements about him in social-media posts, during radio and

television interviews, and during depositions.

The Court entered a notice of default against defendants following the filing of executed

summonses and the failure of defendants to plead or otherwise defend within the allotted time

frame.  Defendants allege that service was improper.  They have moved to vacate the default,

quash service, and dismiss the suit for insufficient service of process pursuant to Fed. R. Civ. P.

12(b)(5), or in the alternative to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ.

P. 12(b)(2), lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), or under the

doctrine of *forum non conveniens*.  For the following reasons, defendants' motion will be granted in part and denied in part.

## I.     Background

### A.     Factual Background

Unless otherwise noted, the following facts are undisputed or affirmatively alleged by the plaintiff.[1]

Christopher Brown is a Massachusetts resident and an attorney licensed to practice in Massachusetts.  (Compl. ¶ 2).  He is a managing member of Brown & Rosen LLC, a Massachusetts law firm.  (*Id.* ¶ 5).

Damon Dash is a music producer and entrepreneur who resides at 13547 Ventura Boulevard, Suite 199, Sherman Oaks, California, and 11975 Crest Place, Beverly Hills, California.  (*Id.* ¶ 3).  He is the principal member of Poppington LLC, a New York limited liability company.  (*Id.* ¶ 4).  The complaint alleges that the address of Poppington LLC is the same as one of Dash's—that is, 13547 Ventura Boulevard, Suite 199, Sherman Oaks, California—and that Rocket Lawyer Inc. is its registered agent for service of process.  (*Id.*).[2]

---

[1] On a motion to dismiss for lack of personal jurisdiction, the court should accept the plaintiff's properly documented evidentiary proffers as true, whether or not disputed, and construe them in the light most favorable to the plaintiff. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 51 (1st Cir.2002). Uncontested facts proffered by the defendant may also be considered.  *Id.*

[2] The Poppington LLC entry in the New York Department of State website states that it has no registered agent and that the DOS Process address (that is, the address to which the Department of State will mail process if accepted on behalf of the entity) is Legalinc Corporate Services, 4101 McEwen Road, Suite 465, Farmers Branch, Texas.  *See* NYS DEPARTMENT OF STATE, DIVISION OF CORPORATIONS, ENTITY INFORMATION, https://appext20.dos.ny.gov/corp_public/corpsearch.entity_search_entry (last visited Nov. 3, 2020).  However, Poppington LLC is also registered in the state of California as a foreign entity.  Its registered agent for service of process is Rocket Lawyer Incorporated; its office address is 33 E Orange Grove Ave, Burbank, California; and its mailing address is 13547 Ventura Boulevard, Suite 199, Sherman Oaks, California.  (Pl. Opp. Ex. A, Feb. 2020 California Secretary of State Statement of Information for Poppington LLC).  Rocket Lawyer Inc. lists its agent for service of process as Incorp Services, Inc.; its entity address as 101 2nd St, 4th Floor, San Francisco, California; and its mailing address as 182 Howard Street #830, San Francisco, California.  (Pl. Opp. Ex. B, Aug. 2019 California Secretary of State Statement of Information for Rocket Lawyer Inc.).  Incorp Services Inc. lists its address for service of process as 5716 Corsa Ave, Suite 110, Westlake Village, California, and identifies Steven Pickett, Chris

Poppington runs an online clothing store and operates a subscription-based music streaming service that is available nationwide.  (*Id.*).

Brown represents Josh Webber and Muddy Water Pictures LLC in a suit brought in the Southern District of New York in 2019 against Dash and Poppington.  *See Webber v. Dash*, 19-cv-00610 (S.D.N.Y. Jan. 22, 2019).  (*Id.* ¶ 8).  In connection with that lawsuit, Dash sent e-mails in February 2019 to Brown; Dash's attorney, Eric Howard; and Eric Silverberg, the law clerk to the judge then presiding over the suit.  In the e-mails, Dash called Brown various derogatory names, such as "clown," "con man," "coward," and "dumb ass."  (*Id.* ¶ 12; Compl. Ex. B, C, E).  He threatened to sue Brown, to "make an example out of him publicly," and to make a documentary about him, and said that his "law career is over."  (Compl. ¶ 12; Compl. Ex. B, C).  He also claimed that he "get[s] dms [direct messages] every day from [Brown's] victims," that he had "a lot of testimonials from good people on different projects that [Brown] had robbed," and that Brown "robbed children."  (Compl. ¶¶ 12, 14; Compl. Ex. B, C, E).

On August 6, 2019, the court ordered Dash to appear for a deposition at Brown's office in Boston.  However, he failed to appear.  (Compl. ¶ 24).  Dash eventually appeared for a deposition on November 21, 2019, in New York, during which he threatened to ruin Brown's career and ensure that he never practiced law again.  (*Id*. ¶¶ 22-23).  The deposition ended when the host law firm called the New York Police Department to escort Dash off the premises due to his behavior.  (*Id.* ¶ 23).  On November 22, 2019, the court sanctioned Dash for his actions, ordering him to pay all costs and fees incurred by plaintiff in connection with the deposition.  (*Id.* ¶ 24).

---

Duque, and Jourdan Cerillo as its authorized employees to accept service of process.  (Pl. Opp. Ex. C, Mar. 2019 California Secretary of State Statement of Information for Incorp Services Inc.).

Brown represented Edwyna Brooks in another lawsuit against Dash and Poppington brought in the Southern District of New York in February 2019.  *See Brooks v. Dash,* 19-cv-01944 (S.D.N.Y. Feb. 28, 2019).  (Compl. ¶ 26).  During Dash's deposition in that case in July 2019, he threatened to ruin Brown's career and to make a documentary about him, called him a "clown" and "bubblegum lawyer," and alleged that Brown's children hated him and that he (Dash) had sexual relations with Brown's partner.  (*Id.* ¶ 27).  Following a bench trial, the court found in favor of plaintiff.  In the opinion, the court stated that Dash had acted with "gross incivility"—for example, characterizing Brown's breath as "doo-doo" during cross-examination—and noted that Dash had "engaged in similar obscene attacks on plaintiff's counsel [that is, Brown] during [his] deposition."  *Brooks v. Dash*, 454 F. Supp. 3d. 331, 334 n.3 (S.D.N.Y. 2020).[3]

Brown represents Monique Bunn in a third lawsuit against Dash, Poppington, and Poppington CEO Raquel Horn, filed in the Southern District of New York in December 2019. (Compl. ¶ 30).  *See Bunn v. Dash*, 19-cv-11804 (S.D.N.Y. Dec. 26, 2019).  The case was transferred to the Central District of California in August 2020 due to lack of proper venue.  *See Bunn v. Dash*, 2020 WL 4586790 (S.D.N.Y. Aug. 10, 2020).  (Def. Reply Ex. 1).

Dash has made a number of public statements in connection with the lawsuits that Brown alleges are defamatory.  In January and February 2019, Dash posted three captioned videos on his personal Instagram page (under the username "duskopoppington") that identified Brown by name and alleged that he was a "lawyer[] that make a living helping bad people steal money from good people and turn a blind eye for the check," that "lawyers for con artist are con artist as

---

[3] The complaint does not allege that the contents of any of the described depositions, e-mails, or trial transcripts were made public at any time.

well," that he was a "low life lawyer" and a "crooked lawyer," and that he "robbed children" and would soon be facing a class-action suit.  (Compl. ¶¶ 15-18; Compl. Ex. F, G, H).  The video that alleged that Brown robbed children and would face a class-action lawsuit was cross-posted in identical form to the Poppington Instagram page, under the username "damedashstudios." (Compl. ¶ 17; Compl. Ex. H).  According to the screenshots of the posts attached to the complaint, the three entries on Dash's Instagram account received, respectively, 77,787; 29,341; and 26,399 views on Instagram.  (Compl. Ex. F, G, H).  Dash has more than 700,000 "followers" on Instagram.  (Compl. ¶ 20).  The cross-posted video on Poppington's Instagram account received 3,287 views.  (Compl. Ex. H).  Dash also started a hashtag on Instagram, #chrisbrownthelawyer, to publish negative comments about Brown.  (Compl. ¶ 37; Compl. Ex. K).

In December 2019, Dash posted an eight-minute video of him arguing with Bunn, the plaintiff in the third lawsuit.  (Compl. ¶¶ 31-32; Compl. Ex. J).  During the last fifteen seconds of the video, a picture of Brown appears with the caption, "Chris Brown the Lawyer is currently being investigated by the FBI for extortion."  (*Id.*).  The video was published on Dash's Instagram page, where it received more than 251,000 views, and posted on the website "World Star Hip Hop," where it received more than 756,000 views.  (Compl. ¶ 32).

During a television interview on November 25, 2019 on *Fox 5*, which airs in New York, Dash falsely accused Brown of calling the police to arrest him in connection with unpaid child support.  (*Id.* ¶ 33).

During a radio interview in Hawaii, which aired on the Hawaiian station KKCR Radio in December 2019 or January 2020, Dash alleged that Brown had extorted him, steals from people, filed three "phony" claims against him, and was being investigated by the FBI.  (*Id.* ¶ 34).

On January 24, 2020, Dash appeared as a guest on the talk radio show "The Breakfast Club." (*Id.* ¶ 36). On the show, he characterized Brown as a lawyer who files frivolous litigation to harass people and claimed that Brown had filed three frivolous claims against him in New York. (*Id.*). "The Breakfast Club" is syndicated in 90 radio markets, with more than one million daily listeners or viewers. (*Id.*). Each episode is uploaded on Youtube after it airs on radio; Dash's episode received over 1.4 million views on Youtube. (*Id.*). The episode also aired on REVOLT TV, a cable channel that airs on Xfinity in Boston. (*Id.*).

Brown alleges that all of Dash's statements and actions were intended to harm his career and business reputation in Massachusetts, where he is a resident.

### B.  Procedural Background

Brown filed a complaint on May 21, 2020, alleging two claims for defamation under Massachusetts law against Dash and Poppington. On the same day, summonses were issued as to all defendants.

On June 17, 2020, Brown filed a return of service as to Dash. According to the affidavit of the process server, the documents were "sub-served" to Nicolette Durham at 11975 Crest Place, Beverly Hills, California, on May 28, 2020. When asked whether she and Damon Dash lived at that address, Durham responded that "both of them live[]at this address." On June 23, 2020, the Court entered a notice of default as to Dash for failure to plead or otherwise defend within 21 days of service.

On July 6, 2020, Brown filed a return of service as to Poppington LLC.[4] According to the affidavit of the process server, she unsuccessfully attempted to serve the summons and

---

[4] Brown also filed a return of service as to Poppington on June 29, 2020, but that filing did not include the attachment with the affidavit of the second process server.

complaint at 101 2nd St, 4th Floor, San Francisco, California—the entity address listed for

Rocket Lawyer, Poppington's agent for service—on May 28, 2020, but the building was under

construction and no one was present to accept service.  On June 11, 2020, the same process

server served Ivan Resnikoff, a person authorized to accept service for Rocket Lawyer, at its

mailing address, 182 Howard St. #830, San Francisco, California.  Brown also filed an affidavit

of supplemental service, which stated that on May 27, 2020, a process server had served the

documents on Jourdan Cerillo, the agent for service of Incorp Services Inc., which is the agent

for service of Rocket Lawyer.  On July 7, 2020, the Court entered a notice of default as to

Poppington LLC for failure to plead or otherwise defend within 21 days of service.

On August 10, 2020, counsel entered an appearance for defendants.  The same day, he

moved to vacate default, quash service of process, and dismiss the case for insufficient service of

process pursuant to Fed. R. Civ. P. 12(b)(5).  In the alternative, the motion seeks dismissal for

lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), lack of subject-matter

jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), or under the doctrine of *forum non conveniens.*

## II.    Service of Process

### A.    Legal Standard

Before a federal court may exercise personal jurisdiction over a defendant, proper service

of process must be effected.  *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104

(1987).  Rule 4 sets forth the acceptable methods for service of process.  Fed. R. Civ. P. 4.

Under Rule 4(e), there are four ways to serve an individual defendant within a federal

judicial district:  (1) by following the requirements of state law for serving a summons in actions

brought in the courts of general jurisdiction in the state where the district court is located or

where service is made (here, Massachusetts or California); (2) by delivering a copy of the

summons and the complaint to the individual personally; (3) by leaving copies of those items at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (4) by delivering copies to an agent authorized by appointment or by law to receive service of process.

Under Rule 4(h), a corporation may be served within the United States (1) in the manner prescribed by Rule 4(e)(1) for serving an individual (that is, by following state law for serving a summons in an action brought in the courts of general jurisdiction in the state where the district court is located or where service is made); or (2) by delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(h)(1).

Under the federal rules, service of process must take place within 90 days after the complaint is filed, or the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). If the plaintiff shows good cause, then "the court must extend the time for service for an appropriate period." *Id*. The court, in its discretion, may also grant an extension of time even absent good cause. Fed. R. Civ. P. 4 Advisory Committee's Note (1993).

When the sufficiency of process is challenged under Rule 12(b)(5), plaintiff bears "the burden of proving proper service." *Rivera-Lopez v. Municipality of Dorado,* 979 F.2d 885, 887 (1st Cir. 1992). A return of service "generally serves as *prima facie* evidence that service was validly performed," but a defendant may adduce "rebuttal evidence to refute any presumption of valid service." *Blair v. City of Worcester,* 522 F.3d 105, 111–12 (1st Cir.2008). An affidavit produced by a defendant denying agency or otherwise denying valid service, standing alone, may be sufficient to refute the *prima facie* presumption of proper service under Massachusetts and

federal law.  *Id.* at 112 (collecting cases).

**B.**     **Analysis**

Plaintiff has filed a return of service stating that the summons and complaint were served in person to Nicolette Durham, a 25-year-old woman.  Durham, upon being asked if "she and Damon live[] at 11975 Crest Pl, Beverly Hills, CA," responded that "both of them live[] at this address."  (Summons Returned Executed, filed June 23, 2020).  That is *prima facie* evidence that plaintiff effected service upon Dash by "leaving a copy of each [the summon and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," as authorized by Rule 4(e)(2)(B).  Defendants have offered no evidence rebutting the evidence that service was made at Dash's "dwelling or usual place of abode," or that Durham was a person of "suitable age and discretion" who "resides there."

Defendants nonetheless object to service as to Dash on several grounds.  First, they contend that Durham was not authorized by law to accept service on his behalf.  While Durham may not have been an "agent" of Dash who was "authorized by appointment or by law to receive service" under Rule 4(e)(2)(C), she was nonetheless a resident of Dash's abode, of suitable age and discretion, authorized to accept service under Rule 4(e)(2)(B).  Second, they characterize the lack of proof that plaintiff's registered process server, Bonita Haller, was paid for her services as "suspicious."  However, they cite no law for the proposition that failure to submit proof of payment invalidates service.  Furthermore, and at any rate, plaintiff later filed such proof with the court.  *See* Fed. R. Civ. P. 4(l)(3)  ("Failure to prove service does not affect the validity of service.  The court may permit proof of service to be amended.").  Third, they contend that plaintiff did not properly serve Dash under California law, which requires "reasonable diligence be exercised to effect personal service" and makes "abode service a secondary method of service

on natural persons." *Evartt v. Superior Ct.*, 89 Cal. App. 3d 795, 799 (Ct. App. 1979).  But

plaintiff was not required to follow California law.  Rule 4(e) clearly indicates that a plaintiff

may serve an individual *either* by complying with state law for service *or* by following Rule

4(e)(2), as plaintiff has done here.

 As to Poppington LLC, plaintiff has filed a return of service affirming that the summons

and complaint were served upon Ivan Resnikoff.  Resnikoff is a person authorized to accept

service for Rocket Lawyer, Inc., Poppington's registered agent for service of process in

California.  Plaintiff has presented evidence, in the form of Statement of Information Certificates

filed with the California Secretary of State, that Rocket Lawyer was, indeed, Poppington's

registered agent in California, and that Rocket Lawyer's mailing address is 182 Howard St.

#830, San Francisco, California (the same address at which Resnikoff was served).  (Pl. Opp. Ex.

A, B).  That is *prima facie* evidence that plaintiff "deliver[ed] a copy of the summons and

complaint to an . . . agent authorized by appointment or by law to receive service of process" for

Poppington, as authorized by Rule 4(h)(1).

Even if that service were somehow invalid, plaintiff has filed an alternative return of

service affirming that the summons and complaint were served upon Jourdan Cerillo, the agent

for service of Incorp Services, which is the designated agent for service for Rocket Lawyer.  And

plaintiff has provided evidence (again, using the Statement of Information Certificates filed with

the California Secretary of State) that Rocket Lawyer designated Incorp Services as its agent for

service of process, and that, in turn, Incorp Services designated Jourdan Cerillo as an authorized

employee to "accept delivery of any copy of service of process . . . on any entity who has

designated [Incorp Services] as its agent for service of process."  (Pl. Opp. Ex. B, C).  Plaintiff

has provided *prima facie* evidence that he served an authorized employee of the agent of the

agent of Poppington, which is sufficient to meet his burden of proving proper service upon a corporation under Rule 4(h)(1).

Defendants have failed to refute that *prima facie* showing of proper service.  They have provided no affidavits or other evidence denying that Rocket Lawyer/Resnikoff or Incorp/Cerillo were agents authorized to accept service of process for Poppington in California.  Their sole argument contesting proper service appears to be that because Poppington LLC is a New York company, plaintiff was required to serve the New York Division of Corporations, a subdivision of its Department of State, as "is stated on the division's website."  (Pl. Mot. at 8).[5]  However, New York imposes no such requirement.  Rather, the website states that the Secretary of State *may* act as a statutory agent for service of process "in addition to other methods prescribed by the law," which surely includes the Federal Rules of Civil Procedure.  *How do I serve process on the Secretary of State?*, NEW YORK DEPARTMENT OF STATE, DIVISION OF CORPORATIONS, STATE RECORDS & UCC, https://www.dos.ny.gov/corps/faq_service_of_process.page.asp.  Furthermore, the website also states that the Secretary of State only accepts service of process for documents associated with "any action or proceeding . . . in this state [New York] or in the federal courts sitting in, or for, this state," which does not apply to this action.  *Id.*

In sum, plaintiff has provided unrebutted evidence of proper service on both Dash and Poppington.  Plaintiff has therefore met his "burden of proving proper service."  *Rivera-Lopez*, 979 F.2d at 887.  The portion of defendants' motion that seeks to quash service and dismiss the suit for insufficient service of process pursuant to Rule 12(b)(5) will therefore be denied.

---

[5] Defendants do not include a link in their motion, but the relevant website appears to be as follows:  *How do I serve process on the Secretary of State?*, NEW YORK DEPARTMENT OF STATE, DIVISION OF CORPORATIONS, STATE RECORDS & UCC, https://www.dos.ny.gov/corps/faq_service_of_process.page.asp.

### III.  <u>Removal of Default</u>

Defendants have also moved to set aside their default.  "A court may set aside an entry of default for good cause."  Fed. R. Civ. P. 55(c).  The "good cause" standard is "a liberal one," *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989); the relevant factors are "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious."  *United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 164 (1st Cir. 2004). Courts have consistently found that a claim of lack of personal jurisdiction may constitute a meritorious defense that provides good cause to set aside the entry of default.  *See, e.g.*, *Aly v. Hanzada for Imp. & Exp. Co.*, 2014 WL 2829513, at *7 (W.D. Mo. June 23, 2014) ("Because a judgment rendered without personal jurisdiction is void, a lack of personal jurisdiction over the defaulting party constitutes 'good cause' to vacate an entry of default.");  *Hale v. McCall*, 425 F. Supp. 396, 399 (E.D. Tenn. 1976) ("Lack of jurisdiction provides a meritorious defense to the plaintiff's action and provides good cause for setting aside the entry of default.");  *Lichtenstein v. Jewelart, Inc.*, 95 F.R.D. 511, 515 (E.D.N.Y. 1982) (granting motion to set aside default for lack of personal jurisdiction under state long-arm statute and dismissing action); *Fraserside IP L.L.C. v. Youngtek Sols. Ltd.*, 796 F. Supp. 2d 946, 957 (N.D. Iowa 2011) (setting aside default entry due to defendant's assertion of lack of personal jurisdiction, without ruling on the merits of the defense).

Here, because defendants have asserted a meritorious defense of lack of personal jurisdiction, the Court will grant the portion of their motion that requests the setting-aside of the entry of default.

### IV.  <u>Personal Jurisdiction</u>

Defendants have moved to dismiss the complaint pursuant to Rule 12(b)(2) on the ground

of lack of personal jurisdiction.  Plaintiff contends, in substance, that defendants' intentional actions directed toward harming his reputation and business relationships in Massachusetts are sufficient to establish personal jurisdiction.

### A.      Legal Standard

The plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendants.  *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002).  In considering a motion to dismiss under Rule 12(b)(2), the court may employ several standards to assess whether plaintiff has carried that burden:  the "*prima facie*" standard; the "preponderance-of-the-evidence" standard; or the "likelihood" standard.  *See id.* at 50-51, 51 n.5; *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145-46 (1st Cir. 1995).  Where, as here, the court is called to make that assessment without first holding an evidentiary hearing, the *prima facie* standard is applied.  *See United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001).  Under that standard, the court takes the plaintiff's "properly documented evidentiary proffers as true and construe[s] them in the light most favorable to [plaintiff's] jurisdictional claim."  *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016) (quoting *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008)).  A plaintiff may not "rely on unsupported allegations in [its] pleadings."  *A Corp.*, 812 F.3d at 58 (quoting *Platten v. HG Bermuda Exempted Ltd.,* 437 F.3d 118, 134 (1st Cir. 2006)).  "Rather, [the plaintiff] must put forward 'evidence of specific facts' to demonstrate that jurisdiction exists."  *Id.* (quoting *Foster-Miller*, 46 F.3d at 145).  Facts offered by the defendant "become part of the mix only to the extent that they are uncontradicted."  *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir. 2009) (quoting *Adelson v. Hananel,* 510 F.3d 43, 48 (1st Cir. 2007)).  Although the court will construe the facts in the light most favorable to the plaintiff in a motion to dismiss, the

plaintiff still has the burden of demonstrating each jurisdictional requirement.  *See Swiss Am.*

*Bank*, 274 F.3d at 618.

The exercise of personal jurisdiction over a defendant must be authorized by statute and

be consistent with the due-process requirements of the United States Constitution.  *Nowak v. Tak*

*How Invs., Ltd.,* 94 F.3d 708, 712 (1st Cir.1996); *Intech, Inc. v. Triple "C" Marine Salvage, Inc.,*

444 Mass. 122, 125 (2005).  Furthermore,

> [a] district court may exercise authority over a defendant by virtue of either
> general or specific jurisdiction. Specific jurisdiction exists when there is a
> demonstrable nexus between a plaintiff's claims and a defendant's forum-based
> activities. General jurisdiction exists when the litigation is not directly founded on
> the defendant's forum-based contacts, but the defendant has nevertheless engaged
> in continuous and systematic activity, unrelated to the suit, in the forum state.

*Swiss Am. Bank*, 274 F.3d at 618 (citations and quotations omitted).

### B.     General Jurisdiction

For an individual, "the paradigm forum for the exercise of general jurisdiction is the

individual's domicile."  *Goodyear Dunlop Tires Operations*, *S.A. v. Brown*,  564 U.S. 915, 924

(2011).  For a foreign-state corporation, a court may assert general jurisdiction "when their

affiliations with the State are so 'continuous and systematic' as to render them essentially at

home in the forum State." *Id.* at 919 (quoting *International Shoe Co. v. Washington,* 326 U.S.

310, 317 (1945)).  To be "at home" in a foreign state, a corporation must have affiliations with

that state so substantial that it is "comparable to a domestic enterprise in that State." *Daimler AG*

*v. Bauman*, 571 U.S. 117, 133 n.11 (2014).  The Supreme Court has indicated that such

jurisdiction will exist only in the "exceptional case."  *Id.* at 139 n.19.

Dash is a California resident who is not employed, and does not own any property, in

Massachusetts.  Poppington is a New York limited liability company that is not alleged to

transact any business in Massachusetts or with Massachusetts-based entities.  And there is no

14

evidence of any other continuous systemic contact with Massachusetts.  Accordingly, this court may not assert general jurisdiction over either Dash or Poppington.

### C.    Specific Jurisdiction

In Massachusetts, a federal court can assert specific personal jurisdiction over an out-of-state defendant in a diversity case only if the state long-arm statute, Mass. Gen. Laws ch. 223A, § 3, so allows, and the exercise of jurisdiction is consistent with constitutional due process. *Daynard*, 290 F.3d at 52.

The Massachusetts long-arm statute authorizes personal jurisdiction as to any cause of action arising from, among others, defendant's "transacting any business in this commonwealth"; "causing tortious injury by an act or omission in this commonwealth"; or "causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth."  Mass. Gen. Laws ch. 223A, § 3(a), (c), (d).

The Supreme Judicial Court has historically interpreted the long-arm statute to extend to the limits allowed by the United States Constitution. *See "Automatic" Sprinkler Corp. of America v. Seneca Foods Corp.,* 361 Mass. 441, 443 (1972); *Tatro v. Manor Care, Inc.,* 416 Mass. 763, 771 (1994).  Accordingly, the First Circuit has held that a district court can "sidestep the statutory inquiry and proceed directly to the constitutional analysis."  *Daynard*, 290 F.3d at 52.[6]

---

[6] "[I]n recent cases, [the First Circuit] ha[s] suggested that the Commonwealth's long-arm statute might impose limits on the exercise of personal jurisdiction 'more restrictive' than those required by the Constitution."  *A Corp. v. All American Plumbing, Inc.*, 812 F.3d 54, 59 (1st Cir. 2016)  (citing *Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016)).  However, where, as here, the exercise of personal jurisdiction over defendants would not satisfy due process, the court need not reach the question of whether personal jurisdiction is appropriate under the "more restrictive" Massachusetts long-arm statute.  *A Corp.*, 812 F.3d at 59.

Due process requires that a defendant over whom a court seeks to exercise jurisdiction has maintained "minimum contacts" with the state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The minimum-contacts analysis has three categories—relatedness, purposeful availment, and reasonableness:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

*Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007) (quoting *Daynard*, 290 F.3d at 60)). The "gestalt" factors address the fairness and reasonableness of subjecting the defendant to the court's jurisdiction by analyzing

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Adelson*, 510 F.3d at 51 (quoting *United Elec., Radio, and Mach. Workers of America v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992)). All three requirements must be met to support a finding of specific jurisdiction. *Phillips Exeter Academy v. Howard Phillips Fund*, 196 F.3d 284, 288 (1st Cir. 1999). The First Circuit has adopted a "sliding scale" approach: "[T]he weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction;" but on the other hand, "a strong showing of reasonableness may serve to fortify a more marginal showing of relatedness and purposefulness." *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 717 (1st Cir. 1996)

(internal citations omitted).

### 1.   Relatedness

For tort claims, the relatedness inquiry "focuses on whether the defendant's *in-forum* conduct caused the injury or gave rise to the cause of action."  *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 622 (1st Cir. 2001).  Here, the complaint alleges that plaintiff has suffered an injury to his professional reputation as an attorney in Massachusetts due to defendants' defamatory remarks, some of which were made available to Massachusetts audiences on the Internet or syndicated television and radio.  The complaint does not allege that defendants made these remarks while physically located in Massachusetts.  However, "the tort of libel is generally held to occur wherever the offending material is circulated."  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984) (citing Restatement (Second) of Torts § 577A (1997)).

Here, plaintiff's underlying claim arises out of defendants' forum-state activity of allowing the allegedly defamatory statements to be published and disseminated in Massachusetts (and, presumably, all fifty states in which people could access defendants' Internet and Instagram posts), which caused in-state injury.[7]  That may be sufficient to satisfy the relatedness prong of the personal-jurisdiction test.  *See, e.g.*, *Neelon v. Krueger*, 2013 WL 2384318, at *5 (D. Mass. May 29, 2013) (publication of defamatory information in press releases and e-mails accessible in Massachusetts sufficient to satisfy relatedness inquiry); *Farquharson v. Metz*, 2013 WL 3968018, at *2 (D. Mass. July 30, 2013) (although it was contested whether foreign defendant's Facebook posts defaming Massachusetts resident were "Massachusetts activities or

---

[7] Defendant did not directly publish his own posts, as one would publish a website or magazine; rather, he created entries on Instagram, and the Instagram application then made those posts public and accessible to online users.  Similarly, the World Star Hip Hop website published defendant's video, and the Breakfast Club radio talk show and REVOLT TV made defendant's interview available on Youtube, radio, and cable television.

contacts," the fact that they gave rise to plaintiff's cause of action was sufficient to establish "prima facie showing of relatedness"); *Ching-Yi Lin v. TipRanks, Ltd.,* 2019 WL 6211246, at *4 (D. Mass. Nov. 21, 2019) (relatedness test satisfied where plaintiff's underlying claim arose out of defendant's forum-state activity of publishing its website, which contained allegedly defamatory content, in Massachusetts); *Mullane v. Breaking Media, Inc.*, 2019 WL 5588961, at *9 (D. Mass. Aug. 13, 2019) ("Breaking Media's operation of a website that is accessible in Massachusetts and that posted the article which allegedly caused the plaintiff's in-state injury may be sufficient to satisfy the relatedness prong of the inquiry.").

It bears noting that plaintiff has never alleged that any Massachusetts residents (other than himself) actually viewed or read the defamatory content posted by defendant, nor that he has suffered concrete injury to his professional reputation in Massachusetts as a result.  And plaintiff has no direct evidence that the material circulated within Massachusetts or reached Massachusetts audiences:  for example, each of the three Instagram posts on Dash's and Poppington's accounts had several thousand views; Dash has more than 700,000 Instagram followers; the video posted on Dash's Instagram page and the "World Star Hip Hop" page received several hundred thousand views; and Dash's appearance on the radio show "The Breakfast Club" received over 1.4 million views on Youtube and was syndicated on a cable channel that airs in Boston.  Plaintiff contends that, of the hundreds of thousands of people that have seen or heard defendants' defamatory remarks, some of them must be Massachusetts residents.[8]

---

[8] Plaintiff does not suggest that the other defamatory statements described in the complaint—depositions taken in New York in the context of a New York lawsuit, e-mails sent to New York attorneys concerning the New York lawsuit, a radio interview that broadcast in Hawaii, and a television interview that aired on a New York news channel—ever reached Massachusetts.

In *Scottsdale Capital Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 21-22 (1st Cir. 2018), the First Circuit held that the plaintiff had not satisfied the relatedness test to establish personal jurisdiction in New Hampshire where it failed to provide evidence that either of the two in-state e-mail newsletter subscribers who received an allegedly defamatory article had actually opened the article and read its contents.   Because proving defamation "require[s] evidence that a third party apprehended the defamatory communication," and the relatedness inquiry "require[s] at least some actionable defamation within the state," a failure to allege in-state apprehension of the defamatory material is fatal to the relatedness prong of the personal-jurisdiction test.  *Id*. at 22.  However, the court left open the possibility that a plaintiff who demonstrated a much larger pool of *potential* readers or viewers of defamatory content, even without proof that those readers actually apprehended the content, could constitute "circumstantial evidence . . . sufficient to create a presumption of publication."  *Id.* at 21-22.

Here, although there is no proof (or, indeed, allegation) that Massachusetts residents apprehended the defamatory content, the hundreds of thousands of views of defendants' videos and posts are likely sufficient circumstantial evidence that at least some of the defamatory content circulated within Massachusetts.  Therefore, plaintiff likely has satisfied the relatedness prong of the personal-jurisdiction test.

## 2.   <u>Purposeful Availment</u>

A defendant's in-state contacts "must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." *Daynard,* 290 F.3d at 60 (quoting *Foster–Miller,* 46 F.3d at 144).  "The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely

upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." *Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir. 1995) (quoting *Keeton v. Hustler Magazine*, 465 U.S. 770, 774 (1984)). The two "key focal points" of the purposeful-availment test are voluntariness and foreseeability: "[t]he contacts must be voluntary and not based on the unilateral actions of another party," and "the defendant's contacts must be such that he could reasonably anticipate being haled into court there." *Adelson*, 510 F.3d at 50 (internal citations and quotations omitted).

The Supreme Court adopted an "effects" test for determining purposeful availment in defamation cases in *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, the Supreme Court held that a California court could exercise personal jurisdiction over two Florida-based reporters based on their "intentional, and allegedly tortious, actions [that] were expressly aimed at California:"

> The allegedly libelous story concerned the California activities of a California resident . . . whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in California.

*Calder*, 465 U.S. at 788-89. The fact that the *National Enquirer*—the magazine that published the allegedly libelous story—had its largest circulation in California, averaging 600,000 copies sold  per week, was additional evidence that defendants had purposefully availed themselves of the forum state. *Id.* at 790. Similarly, in *Keeton v. Hustler Magazine*, an opinion published the same day, the Supreme Court found that defendant's average monthly sale of 10,000 to 15,000 magazines in New Hampshire showed that it "continuously and deliberately exploited the New Hampshire market" and "must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine." 465 U.S. 770, 781 (1984).

Here, unlike *Calder*, plaintiff has not sufficiently alleged that defendants' tortious statements "were expressly aimed at" Massachusetts. *Calder* at 789. While Massachusetts may have been the "focal point" of the harm suffered (to plaintiff's reputation), it was not the "focal point . . . of the story." *Id*. at 790. Defendants' defamatory statements about plaintiff did not concern plaintiff's actions in Massachusetts (rather, they were chiefly complaints about plaintiff's actions in New York lawsuits); they did not draw upon Massachusetts sources; and none of the posts or videos even mentioned the words "Boston" or "Massachusetts." There is no evidence that defendants deliberately circulated or publicized his posts in the Massachusetts market or received remuneration for doing so, as in *Calder* and *Keeton*. It is not even clear that Dash—having encountered plaintiff in New York lawsuits—knew that he was a Massachusetts-based attorney; the only evidence supporting that inference is that a judge at some point ordered Dash to attend a deposition conducted by plaintiff in Boston. That falls well short of the foreseeability of injury imputed to the defendants in *Calder*, who "knew that the brunt of [the] injury would be felt by [the defamation victim] in the State in which she lives and works and in which the [defamatory publication] has its largest circulation." *Calder*, 465 U.S. at 789-90.

In any event, *Calder* does not broadly impose personal jurisdiction on all out-of-state tortfeasors whose actions lead to in-state injury. The First Circuit cautioned that *Calder* "cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction." *Swiss Am. Bank*, 274 F.3d at 623. In addition to effects in the forum state, there must be "some indication that the defendants reached into the forum, such as mail or telephone contacts" or solicitation of business. *Id.* at 622. In *Walden v. Fiore*, 571 U.S. 277, 285 (2014), the Supreme Court clarified the *Calder* "effects test," rejecting the plaintiff's attempt to assert personal jurisdiction over a Georgia police officer whose seizure

of plaintiff's cash in a Georgia airport caused the plaintiff foreseeable financial harm in his home

state of Nevada:

> [O]ur "minimum contacts" analysis looks to the defendant's contacts with the
> forum State itself, not the defendant's contacts with persons who reside there. . . .
> Accordingly, we have upheld the assertion of jurisdiction over defendants who
> have purposefully "reach[ed] out beyond" their State and into another by, for
> example, entering a contractual relationship that "envisioned continuing and
> wide-reaching contacts" in the forum State, *Burger King Corp. v. Rudzewicz*, 471
> U.S. 462, 479-480 (1985), or by circulating magazines to "deliberately exploi[t]"
> a market in the forum State, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781
> (1984) . . . . But the plaintiff cannot be the only link between the defendant and
> the forum. Rather, it is the defendant's conduct that must form the necessary
> connection with the forum State that is the basis for its jurisdiction over him.

Here, there is no indication that defendants "reached into the forum" of Massachusetts, *Swiss*

*Am. Bank*, 274 F.3d at 622, or "reached out beyond their [home] state," *Walden*, 571 U.S. at 285,

other than by posting videos and writings that were available in all fifty states, including

Massachusetts. Because defaming plaintiff's business reputation in Massachusetts appears to be

the "only link between the defendant and the forum," *Walden*, 571 U.S. at 285, that fact, without

more, is insufficient to support a finding of purposeful availment to create personal jurisdiction.

These principles apply to Internet activity as well. "'The mere existence of a website that

is visible in a forum . . . is not enough, by itself, to subject a defendant to personal jurisdiction in

that forum.' . . . Given the 'omnipresence' of Internet websites, such a rule would 'eviscerate'

the limits on personal jurisdiction over out-of-state defendants." *Cossaboon v. Maine Med. Ctr.*,

600 F.3d 25, 35 (1st Cir. 2010) (quoting *McBee v. Delica Co.*, 417 F.3d 107, 124 (1st Cir.

2005)). Courts have been reluctant to find the "purposeful availment" prong satisfied where, as

here, the only link between an out-of-state defendant and in-state injury is a website or Internet

posting that in-state residents can access, especially when the defamatory posting makes no

mention of the forum state. *See, e.g.*, *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 60-61 (1st

Cir. 2016) (no purposeful availment in Massachusetts where defendant's website, which allegedly infringed on Massachusetts company's trademark, was accessible in Massachusetts and everywhere else in the world, but did not mention Massachusetts or permit Massachusetts residents to order goods or services); *Lin v. TipRanks, Ltd.*, 2019 WL 6211246, at *5-6 (D. Mass. Nov. 21, 2019) (publication of defamatory information about Massachusetts-based analyst on website available in Massachusetts did not satisfy purposeful-availment test, because the "website is available to anyone with internet access and . . . is no more likely to solicit customers in Massachusetts than anywhere else" and location of plaintiff was "not apparent by simply visiting the site"); *Narcisi v. Turtleboy  Digital Marketing, LLC*, 2020 WL 5258491 (D.R.I. Sep. 3, 2020) (no purposeful availment of Rhode Island when defendant published defamatory story about Rhode Island plaintiff on his blog, which was accessible from anywhere in the world); *BroadVoice, Inc. v. TP Innovations LLC*, 733 F. Supp. 2d 219, 226 (D. Mass. 2010) (no purposeful availment when defendant created website to defame Massachusetts company that was "aimed at Massachusetts only in the sense that it could be accessed by Massachusetts residents (along with the rest of the world)" and "did nothing to incite residents of Massachusetts . . . to take up arms against [plaintiff]"); *Mullane v. Breaking Media, Inc.*, 2019 WL 5588961, at *9 (D. Mass. Aug. 13, 2019) (no purposeful availment when defendant, a blog "freely accessible to readers in Massachusetts" but "not aimed at legal consumers in Massachusetts specifically," published allegedly defamatory story about Massachusetts resident); *Nasuti v. Kimball,*  2010 WL 2639854 (D. Mass. June 29, 2010) (no personal jurisdiction in Massachusetts where defendants issued a "defamatory" press release on their website about plaintiff's disbarment in Louisiana, which did not reference plaintiff's law practice in Massachusetts); *Farquharson v. Metz*, 2013 WL 3968018, at *2 (D. Mass. July 20, 2013) (no

personal jurisdiction over Canadian defendant who made defamatory Facebook posts about Massachusetts-based plaintiff, because "she did not take any additional steps to specifically aim content at any Massachusetts residents").  Similarly, none of the publications that plaintiff alleges reached Massachusetts audiences—the Instagram posts, the video posted on Instagram and the World Star Hip Hop site, and the "Breakfast Club" radio show interview that was published on Youtube, radio, and a cable channel—were designed to specifically engage or solicit Massachusetts audiences, or even referred to plaintiff's law practice in Massachusetts. The mere fact that those posts were as visible in Massachusetts, as they were in all fifty states, is insufficient to show purposeful availment.

In order for online activity to show purposeful availment of a forum state necessary to support personal jurisdiction in that state, "something more is necessary." *Cossaboon*, 600 F.3d at 35.  The "something more" typically requires some evidence that defendants' online actions aimed at, targeted, specifically communicated with, solicited business in, or (at the very least) *mentioned* the forum state and its residents.  *See, e.g.*, *Neelon v. Krueger*, 2013 WL 2384318, at *6-7 (D. Mass. May 29, 2013) (defendant's e-mails and press releases defaming plaintiff by threatening to report him to the Massachusetts Bar Association were "expressly aimed at Massachusetts" and sufficient to find purposeful availment); *Mateo v. University Sys. of New Hampshire*, 2019 WL 199890, at *6 (D. Mass. Jan. 14, 2019) (defendant's sending of allegedly defamatory letters to Massachusetts law schools may have been sufficient to find that they "intentionally reached into the state"); *Abiomed, Inc. v. Turnbull*, 379 F. Supp. 2d 90 (D. Mass. 2005) (defendant's posting of defamatory statements about Massachusetts company on online message board, some of which were directed at Massachusetts residents frequenting the board, and some of which were attributed to "inside" information from Massachusetts sources,

sufficient to show purposeful availment); *First Act, Inc. v. Brook Mays Music Co.*, 311 F. Supp. 2d 258 (D. Mass. 2004) (finding purposeful availment in Massachusetts when defendant sent defamatory e-mails to 60 individuals in Massachusetts); *Sindi v. El-Moslimany*, 2014 WL 6893537 (D. Mass. Dec. 5, 2014) (finding purposeful availment in Massachusetts when defendant sent defamatory e-mails and tweets to Harvard and MIT employers disparaging plaintiff).  Unlike the defendants in those cases, here the allegedly defamatory postings did not reference plaintiff's law practice in Massachusetts, were not e-mailed or sent to Massachusetts residents, and did not purport to be based on Massachusetts sources.  Plaintiff has not sufficiently alleged indicia of purposeful availment necessary to support a finding of personal jurisdiction in Massachusetts.

### 3.      Reasonableness

Because plaintiff has failed to allege facts showing that defendants have met the purposeful-availment test of minimum contacts in the forum state, this "eliminates the need even to reach the issue of reasonableness." *Sawtelle v. Farrell*, 70 F.3d 1381, 1394 (1st Cir. 1995). "[T]he [g]estalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled."  *Id.* (citing *United Elec., Radio and Mach. Workers of America v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1091 n.11 (1st Cir. 1992).

In sum, defendants have not maintained "minimum contacts" with Massachusetts "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Because the claim underlying the litigation only tenuously arises out of, or relates to, defendants' forum-state activities, and because defendants' in-state contacts do not represent a purposeful availment of the privilege of conducting activities in the forum state, exercise of personal jurisdiction over

defendants would not be consistent with the requirements of due process.  *Daynard*, 290 F.3d at

60.  Accordingly, defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(2) will be granted.[9]

**V.**     **Conclusion**

For the foregoing reasons, the portions of defendants' motion to quash service and to

dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(5) are DENIED.  The portions of the

motion seeking to set aside default and to dismiss the complaint pursuant to Fed. R. Civ. P.

12(b)(2) are GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor, IV
Chief Judge, United States District Court

Dated:  November 18, 2020

---

[9] Because the Court lacks personal jurisdiction over defendants, it declines to decide whether it has subject-matter jurisdiction over the matter or whether the case should be dismissed under the doctrine of *forum non conveniens.*